IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-cv-1389-WJM-KLM

GENETIC TECHNOLOGIES LIMITED,

Plaintiff,

v.

AGILENT TECHNOLOGIES, INC., a Delaware corporation;
BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation;
EUROFINS STA LABORATORIES, INC., a Colorado corporation;
GLAXOSMITHKLINE PLC, a British company;
HOLOGIC, INC., a Delaware corporation;
MERIAL L.L.C., a Delaware corporation;
NAVIGENICS, INC., a Delaware corporation;
NEOGEN CORPORATION, Michigan corporation;
PFIZER INC., a Delaware corporation; and
454 LIFE SCIENCES CORPORATION, a Delaware corporation,

Defendants.

---

**DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S MOTIONS TO SEVER AND TRANSFER TO THE DISTRICT OF DELAWARE**

---

Pursuant to Fed. R. Civ. P. 20 and 21 and 28 U.S.C. §1404(a), defendant Bristol-Myers Squibb Company ("BMS") respectfully moves the Court for an order severing the claims and counterclaims between BMS and plaintiff Genetic Technologies Limited ("GTG") and transferring them to the United States District Court for the District of Delaware.  Pursuant to D.C.COLO.LCivR 7.1(A), Tracey Allen certifies that she conferred with GTG's counsel, Ben Lieb, who stated that GTG opposes the motion, and counsel for defendants, who do not object.

## INTRODUCTION AND SUMMARY OF ARGUMENT

GTG, which describes itself as an Australian corporation with its principal place of business in Victoria, Australia, brought this action against 10 distinct and unrelated companies, including BMS, alleging infringement of one or more claims of United States Patent No.

5,612,179 (the "179 patent").[1]  Because the Complaint does not and cannot identify any connection between BMS's allegedly infringing activities and the conduct of the other named defendants, and because Plaintiff has failed to allege any meaningful connection between either GTG or BMS and this forum, the claims against BMS should be severed and transferred to Delaware pursuant to Fed. R. Civ. P. 20 and 21 and 28 U.S.C. § 1404(a).

Severance and transfer of venue with respect to the claims against BMS are appropriate for several reasons.  *First*, contrary to Rule 20, the claims against BMS do not arise from the "same transaction or occurrence" as those against the other eight defendants.  Instead, the claims against BMS arise from the independent activities BMS is alleged to have undertaken with respect to its own unique products.  GTG's claims against the remaining defendants – based on wholly unrelated activities – have no bearing on whether BMS's alleged activities infringed.

*Second*, BMS's ability to defend itself would be prejudiced if BMS were forced to litigate alongside eight unrelated defendants in a suit involving such diverse accusations of allegedly infringing activity.  Given the number of defendants, the disparity in their products, businesses, and allegedly infringing conduct, and the complexity of the technology involved, keeping BMS joined in this case is highly likely to cause BMS to incur unnecessary additional delay and expense to resolve the claims against it.  Moreover, given GTG's demand for a jury trial, requiring BMS to present its defenses with parties whose allegedly infringing activities have no factual connection to BMS would confuse the jury and create the risk of an unfair result.

*Finally*, BMS has no connection to this forum other than the fact that its products (none of which is alleged to contain any infringing technology) may be purchased here – a connection

---

[1] One of the named defendants, Navigenics, Inc., was voluntarily dismissed.  Dkt. No. 7.

shared with every other district in the country and which the Federal Circuit has repeatedly held is insufficient to prevent transfer.  BMS has no employees or documents anywhere in this District that would be relevant to resolving any issue in this case.  GTG, an Australian company, also has no apparent interest in litigating in this District, other than that it chose counsel who are located here.  As a result, convenience factors weigh heavily in favor of transfer to Delaware, the district in which BMS is incorporated and that is located within reasonable traveling distance from the locations in which relevant BMS witnesses and documents are likely to be found.

## RELEVANT FACTS

### I.       GTG's Lack of Connection to Colorado

GTG is incorporated and has its principal place of business in Australia.  Compl. ¶ 1. The inventor identified in the patent is Malcolm J. Simons of Fryerstown, New Zealand, and the original assignee of the 179 patent was GeneType A.G. of Zug, Switzerland.  *Id.* at Ex. A.  The Complaint does not allege any connection between GTG or the 179 patent and this forum.

### II.      The Allegations Against BMS

BMS is incorporated in Delaware and has a place of business in New York City.  Answer ¶ 3.  GTG's allegations against BMS focus on testing allegedly conducted in connection with two products associated with BMS – Coumadin® (warfarin) and Plavix® (clopidogrel bisulfate). Compl. ¶¶ 35-52.  GTG contends that BMS used methods that infringe the 179 patent in connection with certain activities relating to changes that the United States Food and Drug Administration ("FDA") required BMS to make on the package inserts for those products.  *Id.*

Specifically, as to Coumadin®, GTG alleges that, "[i]n 2007, Bristol Myers began including information about the importance of -1639 A>G [genetic mutation] and Warfarin dosage in the package insert of Coumadin" (*id.* ¶ 41), and that the "first genetic test to be cleared

by the FDA for Warfarin resistance testing … was cleared in September 2007, shortly following Bristol-Myers' labeling change for Coumadin" (*id*. ¶ 42).  The allegations regarding Plavix® are similar.  GTG alleges that "Bristol-Myers has funded and/or provided assistance to several studies to investigate the impact of genetic polymorphisms on metabolism of [Plavix®], with at least two such studies analyzing the non-coding CYP2C19*17 promoter polymorphism" (*id*. ¶ 44), and that, in "March 2009, the FDA announced a new Plavix warning alerting doctors and patients to the effectiveness of Plavix depending on CYP2C19 genotype" (*id*. ¶ 46).  GTG alleges that these activities infringe the claims of the 179 patent.  *Id*. ¶¶ 43, 47.

Importantly, GTG failed to allege that any product sold by BMS in Colorado or elsewhere either contains or is manufactured using technology that would infringe the 179 patent.  Rather, GTG's allegations focus solely on alleged testing methods that were purportedly used in studies relating to the products after they had already been launched on the market.

GTG does not and cannot allege that any BMS employee who was involved in any alleged studies relating to Plavix® or Coumadin® or in any interactions with the FDA concerning those products is located in Colorado.  To the contrary, the BMS research scientists who are responsible for research relating to Coumadin® and Plavix® are located in Lawrenceville, Princeton, Hopewell, or New Brunswick, New Jersey (Ex. 1, Decl. of Maryellen McQuade ¶ 2 ("Decl.")), cities which are all within 100 miles of Wilmington, Delaware, the seat of the U.S. District Court for the District of Delaware (Ex. 2), but more than 1700 miles from this Court.  Ex. 3.  The BMS regulatory personnel expected to have knowledge of interactions with the FDA regarding the alleged Coumadin® and Plavix® label changes are located in the four referenced cities in New Jersey, in Plainsboro, New Jersey, or in Wallingford, Connecticut (Decl. ¶ 3), the

latter of which are approximately 85 and 200 miles from Wilmington, respectively, but more than 1700 miles from Colorado.  Ex. 4.  None of the documents that are likely to be relevant to the Complaint's allegations against BMS are kept in Colorado, but, instead, are located largely within New Jersey and Connecticut.  Decl. ¶¶ 2, 3.

To the extent GTG identifies any third-parties who were involved in the allegedly infringing activities of BMS, GTG fails to establish any connection between those parties and this forum.  For example, the FDA, identified in paragraphs 39, 40, 42, and 46 of the Complaint, is located in Silver Spring, Maryland.  Ex. 5.  Silver Spring is 105 miles from Wilmington but more than 1600 miles from Denver.  Ex. 6.  Sanofi-aventis, which the Complaint identifies as a co-marketer with BMS for Plavix® (Compl. ¶ 45), is located in Bridgewater, New Jersey (Ex. 7), which is 93 miles from Wilmington but more than 1700 miles from Denver.  Ex. 8.

The Complaint also refers to three articles – Ranade *et al*. (Compl. ¶ 49); Zhang *et al*. (*id*. ¶ 50), and Florez, *et al*. (*id*. ¶ 51), which are purported to have some connection with BMS's allegedly infringing activities.  Because the Complaint only describes the author and year for these articles, it is unclear precisely to what GTG is referring.  But, to the extent the publications GTG intended to reference are those attached as Exhibits 9-11, none of them suggests that any of the work or participants involved were located in Colorado.  Indeed, these articles demonstrate that at least some of the work addressed in the studies was conducted much closer to Delaware. For example, the Florez publication references Rockville, Maryland (Ex. 11 at 1), which is 115 miles from Wilmington but 1600 miles from this Court.  Ex. 12.  The Zhang publication references a department at BMS located in Princeton, New Jersey (Ex. 10 at 2270), and the

Ranade publication references a number of locations, including Princeton, New Jersey and several others on the east coast, but not one of them is in Colorado (Ex. 9 at 1561).

**III.     The Allegations Against the Other Defendants**

Like BMS, five other defendants are alleged to be incorporated in Delaware.  Compl. ¶¶ 2, 6-7, 10-11.  Only one defendant, Eurofins STA Laboratories, Inc. ("Eurofins"), not alleged to have any connection to BMS, is alleged to be incorporated and have a principal place of business in Colorado.  *Id*. ¶ 4.  The remaining two defendants are alleged to be a British company and a Michigan corporation.  *Id*. ¶¶ 5, 9.  Moreover, although each of the defendants is alleged to have infringed the 179 patent, the Complaint does not identify any common transaction or occurrence relating to their purportedly infringing acts.  The allegations against each are generally as follows.

- *Agilent Technologies, Inc. ("Agilent")*:  The Complaint alleges that Agilent manufactured and/or sold infringing diagnostic instruments and laboratory equipment.  *Id*. ¶¶ 29-34.
- *Eurofins*:  The allegations against Eurofins concern allegedly infringing laboratory work and databases relating to genotyping of plant life.  *Id*. ¶¶ 53-64.
- *GlaxoSmithKline PLC ("GSK")*:  The allegations against GSK concern alleged genotyping activities associated with its Ziagen and Tykerb products.  *Id*. ¶¶ 65-77
- *Hologic, Inc.("Hologic")*:  The allegations against Hologic concern sales of diagnostic products and services generally relating to DNA and RNA analysis.  *Id*. ¶¶ 78-83.
- *Merial L.L.C. ("Merial")*:  The allegations against Merial concern genetic tests for DNA markers in beef and dairy cattle.  *Id*. ¶¶ 84-89.
- *Navigenics, Inc.* ("*Navigenics*"):  The allegations against Navigenics (now dismissed) concern the alleged performance of various genotyping services.  *Id*. ¶¶ 90-97.
- *Neogen Corp. ("Neogen")*:  The allegations against Neogen concern genetic testing and diagnostics related to its food and animal safety products.  *Id*. ¶¶ 98-108.
- *Pfizer Inc. ("Pfizer")*:  The allegations against Pfizer concern alleged genotyping activities associated with its Camptosar and Zoloft products.  *Id*. ¶¶ 109-126.
- *454 Life Sciences Corp. ("454")*:  The allegations against 454 concern the use of systems to analyze genes.  *Id*. ¶¶ 127-130.

Thus, the Complaint describes entirely separate alleged infringing acts by each defendant.

- 6 -

**ARGUMENT**

I.  **THE COURT SHOULD SEVER THE CLAIMS AGAINST BMS BASED ON IMPROPER JOINDER.**

    A.    **Legal Standard**

Defendants may be joined in a single lawsuit only "if: (A) any right to relief is asserted against them jointly, severally, or in the alternative *with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences*; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2) (emphasis added).  GTG bears the burden of alleging sufficient facts to make joinder appropriate.  *See, e.g.*, *Rudd v. Lux Prods. Corp. Emerson Climate Techs. Braeburn Sys., LLC.*, No. 09-cv-6957, 2011 WL 148052, at *2 (N.D. Ill. Jan. 12, 2011); *Philips Elecs. N. Am. Corp. v. Contec Corp.,* 220 F.R.D. 415, 417 (D. Del. 2004).

Neither the Tenth Circuit nor this District has addressed the precise question of whether to sever a misjoined claim in a patent infringement case on grounds that the allegedly infringing activity was not part of the same transaction or occurrence.  In this context, decisions in this District relating to the application of Rule 20 in other intellectual property cases are instructive.

In *MDM Group Assocs. v. Midgett Realty, Inc.*, No. 07-cv-02543, 2008 WL 2756926 (D. Colo. July 14, 2008), a copyright infringement case, the Court found that the defendants had been improperly joined when the only similarity in the claims against the defendants was that the plaintiff sought to prove that each infringed upon the same copyrighted material.  *Id.* at *3.  The Court explained that the same transaction requirement could not be met "by merely alleging that the plaintiffs suffered the same harm from alleged violations of their copyrights."  *Id*.  Otherwise, "there would be virtually no limit to the number of parties that could be joined, which would effectively nullify the transactional requirement."  *Id.*

- 7 -

The decision in *B&R Plastics, Inc. v. Kikkerland Design, Inc.*, No. 08-cv-02646, 2009 WL 3698528 (D. Colo. Nov. 2, 2009) also supports BMS's request here.  There, the Court found that "[c]laims may arise out of the same transaction or occurrence if the *infringing conduct by the putative defendants is 'logically related'*."  *Id*. at *3. (emphasis added).  Joinder under Rule 20(a)(2) was proper in that case because the "allegations involve the infringement of Plaintiff's patents through the manufacture, design, market and sale of the *same products*, and establish that *all defendants use the same Chinese importer*."  *Id*. (emphasis added).  Here, in contrast to the facts of *B&R Plastics,* the alleged infringement differs as to each defendant, and the alleged underlying infringing acts do not overlap.

Courts in other jurisdictions similarly have interpreted Rule 20 to only allow "reasonably related claims for relief by or against different parties to be tried in a single proceeding."  *See*, *e.g*., *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983).  In patent infringement cases, courts have determined that joinder is not proper where defendants have engaged in unrelated allegedly infringing activities.  *See, e.g., WiAV Networks, LLC v. 3Com Corp.*, No. 10-cv-03448-WHA, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010). ("Joinder is often improper where [multiple] competing businesses have allegedly infringed the same patent by selling different products"). (internal quotations and citation omitted).

**B.** **BMS Is Not Properly Joined Because The Claims Against It Share No Common "Transaction" Or "Occurrence" With The Claims Against Any Of the Eight Other Defendants.**

As described above, GTG has attempted to join BMS with eight other remaining defendants, each of which is alleged to be engaged in infringing activities that are independent of the alleged infringing activities of the other defendants.  GTG's allegations against BMS focus

on activities purportedly undertaken with respect to two specific products, Plavix® and

Coumadin®.  None of the allegations related to the other defendants concerns these products or

any other alleged activity or conduct by BMS.  Similarly, none of the allegations against BMS

concerns any product or conduct relating to any other defendant.  The only commonality is that

each defendant is alleged to infringe one or more claims of the 179 patent in its own unique way.

That is not enough to satisfy Rule 20.  As a matter of law, the mere assertion by a patentholder

that multiple defendants infringe the same patent does not mean that the claims arise out of the

same transaction or occurrence.  *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*,

292 F.3d 1363, 1372 & n.6 (Fed. Cir. 2002) (claims "based on infringement of the same patent"

were "not arising out of the same transaction or occurrence").

      Consistent with Federal Circuit precedent, numerous district courts have rejected

patentholders' efforts to join unrelated defendants in patent litigation.  *See, e.g.*, *Interval*

*Licensing LLC v. AOL, Inc.*, No. 10-cv-1385-MJP, 2011 WL 1655713, at *2 (W.D. Wash. Apr.

29, 2011) ("Defendants are accused of infringing the patents in similar ways, but not as part of

the same transaction or occurrence.  . . .  Each Defendant operates differently and offers products

that often compete with those of other Defendants.  Joinder is thus improper under Rule 20(a)");

*Rudd,* 2011 WL 148052, at *4; *Children's Network, LLC, v. Pixfusion LLC,* No. 10 cv 2511,

2010 WL 2640120, at *9 (S.D.N.Y. June 30, 2010).[2]  In sum, for the reasons explained above,

severance under Rule 20 is warranted because no commonality exists between the allegations

against BMS and those asserted against any other defendant.

> ### C.    Severance Is Further Warranted Under Rule 21 To Promote Judicial Economy, Avoid Prejudice, and Prevent Manipulation of Venue.

Not only is joinder improper under Rule 20, the Court should also exercise its discretion

under Fed. R. Civ. P. 21 to sever BMS from this action to avoid "delay or prejudice."  As

described above, the allegations of infringement against BMS have no connection to any of the

alleged activities of the other named defendants.  Accordingly, fact discovery, expert discovery,

claim construction arguments, and trial testimony regarding BMS's infringement defenses will

present unique issues. *See WiAV Networks*, 2010 WL 3895047, at *2 ("[P]roof of infringement

would necessarily require proof of facts specific to each individual defendant and to each

accused product.  The mere fact that twelve defendants all manufacture, sell, or distribute their

own laptop computers does nothing to obviate the bone-crushing burden of individualized

methods of proof unique to each product.").

If forced to defend with eight other defendants, BMS's defenses not only would be

diluted but unfairly prejudiced in a way that risks offending due process.  For example, if the

presumptive Federal Rules were deemed to apply, each of nine defendants would only have

---

[2] *See also Thermapure, Inc. v. Temp-Air, Inc.*, No. 10-cv-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2010); *WiAV Networks,* 2010 WL 3895047, at *1; *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1285 (D. Ariz. 2009) (trademark infringement); *Pergo, Inc. v. Alloc, Inc.,* 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003); *Philips*, 220 F.R.D. at 417; *Androphy v. Smith & Nephew,* 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998); *New Jersey Mach. Inc. v. Alford Indus.,* 21 U.S.P.Q.2d 2033, 2034-35 (D.N.J. 1991), *aff'd*, 983 F.2d 1087 (Fed. Cir. 1992); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith,* 564 F. Supp. 1358, 1371 (D. Del. 1983); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 974 (N.D. Ill. 1973).

approximately 45 minutes of deposition time for each seven-hour deposition.  Thus, even if the inventor of the 179 patent were deposed for three full days (21 hours), each defendant would have only 2.3 hours of deposition time—only about one-third of the time allotted to a single defendant.[3]  Similarly, BMS's ability to present its defenses coherently and efficiently at trial without confusing the jurors would be jeopardized by the presence of numerous other defendants making presentations on unrelated issues.

If GTG had sued BMS alone in this District, that case would plainly be transferrable under 28 U.S.C. § 1404(a) because GTG fails to identify any connection between either BMS or GTG and this District.  In light of GTG's misjoinder, the Court would be justified in dismissing the claims against BMS entirely.  *See* Fed. R. Civ. P. 21 (Court may "drop" a misjoined party); *WiAV Networks*, 2010 WL 3895047, at *3.  At the very least, the Court should prevent GTG from forcing BMS to litigate in a venue with no connection to their dispute.  The "venue laws are not [to be] frustrated by a party's attempt at manipulation."  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (citing *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1195 (2010)).

## II.      UPON SEVERING THE CLAIMS AGAINST BMS, THE COURT SHOULD TRANSFER THEM TO THE DISTRICT OF DELAWARE.

### A.      Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Because BMS is incorporated in Delaware and the relevant witnesses and evidence are located predominantly near that district, and *neither BMS nor GTG has any meaningful connection to this District*, there is "good cause" to transfer the claims against BMS

---

[3] Although it may reduce the potential for prejudice, extending deposition time to accommodate multiple defendants would unduly burden BMS by unnecessarily increasing defense costs.

to the "clearly more convenient" District of Delaware.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).  BMS has the burden of proving that:  (1) the action could have been brought in the other forum, (2) the current forum is inconvenient, and (3) the interests of justice are better served by transferring the action.  *See Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005); 28 U.S.C. § 1404(a).

In deciding whether to grant a motion to transfer, courts look at a variety of private and public interest factors affecting the convenience of the forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  Factors pertaining to the private interests of the litigants include such practical concerns as the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witness, and the cost of obtaining attendance of willing witnesses.  *See id.* at n.6.  The public factors bearing on the question include administrative difficulties, the local interest of the courts, the comfort of the court in applying the governing law, conflict of laws issues, and the unfairness of burdening citizens in an unrelated forum with jury duty.  *See id.*; *see also Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1180 (10th Cir. 2009) (same listing); *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

**B.      The Claims Against BMS Could Have Been Brought in Delaware.**

BMS in incorporated in Delaware and thus is subject to personal jurisdiction there. Compl. ¶ 3; Answer ¶ 3.  Venue is also proper in the District of Delaware because BMS resides there.  28 U.S.C. §§ 1391(c), 1400(b).

**C.      The Private Interest Factors Support Severance and Transfer.**

BMS is incorporated in Delaware, and most of the likely documents and witnesses relevant to the claims arising from BMS's alleged infringing acts are located in the nearby states

of New Jersey and Connecticut.  *See* Ex. 1, Decl.¶¶ 2, 3.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  By contrast, *none* of the documents relevant to the allegations against BMS appears to be located in Colorado.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254-56 (Fed. Cir. 2010) (transfer is appropriate where "it appears that a significant portion of the evidence" is in the transferee venue and no likely source of proof is in the transferor venue).[4]

Further, the District of Delaware is dramatically more convenient for the vast majority of likely witnesses and apparently no *less* convenient for any witness.  BMS is not aware of *any* witnesses likely to be located in this District.  To testify at trial in Colorado, BMS witnesses from New Jersey or Connecticut would be burdened by a trip of almost 2000 miles, instead of between less than 100 and no more than 220 miles to attend trial in Delaware.  *See In re Nintendo*, 589 F.3d at 1199 (analyzing inconvenience to witnesses); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).[5]  The location of potential third party witnesses also favors the Delaware forum.  *In re Verizon Bus. Network Servs. Inc.*, No. 956, 2011 WL 1026623, at *2 (Fed. Cir. Mar. 23, 2011).  None of the third parties referenced in the Complaint in relation

---

[4] *See also Nintendo*, 589 F.3d at 1198-1200 (similar); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (similar); *Genentech*, 566 F.3d at 1345-46 (similar); *TS Tech*, 551 F.3d at 1320-21 (similar).

[5] *See also In re Morgan Stanley*, Nos. 962, 964, 967, 2011 WL 1338830, at *1 (Fed. Cir. Apr. 6, 2011) ("[T]ransfer would significantly minimize the cost, time, and expense of travel to attend trial, which is the very purpose of § 1404(a)"); *Verizon*, 2011 WL 1026623, at *2; *Acer*, 626 F.3d at 1255; *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381-82 (Fed. Cir. 2010); *Genentech*, 566 F.3d at 1345-46.

to BMS is alleged to have any connection to Colorado, and at least some appear to be within the subpoena power of the Delaware court, *e.g.*, Sanofi-aventis.  *See* Fed. R. Civ. P. 45(b)(2)(C).

GTG's witnesses are presumably located outside the United States, in locations as far-flung as Australia, New Zealand, or Switzerland.  Thus, litigating in Delaware presents no greater burden on them than litigating in Colorado.  *See, e.g.*, *CSI Tech., Inc. v. Commtest Instruments Ltd.*, No. 080-cv-450, 2008 WL 4057546, at *5 n.8 (D. Minn. Aug. 26, 2008) (pointing out *de minimis* difference to witnesses of travel between New Zealand and Minnesota versus between New Zealand and Knoxville).

While courts in some cases may consider the plaintiff's choice of forum, GTG has not alleged any connection whatsoever with this District, and BMS is aware of none.  Courts in this District grant less deference to plaintiff's choice of forum if plaintiff or the conduct underlying the claims has no significant contact with the forum.  *See Wood v. Houghton Mifflin Harcourt Publ'g Co.*, No. 07-cv-01516, 2008 WL 2113344, at * 2 (D. Colo. May 19, 2008).[6]  Thus, the private interest factors heavily favor transfer.[7]

---

[6] Indeed, GTG's filing of multiple lawsuits involving the 179 patent in jurisdictions around the country demonstrates that it has no particular connection to or interest in this forum. *See, e.g.*, *GTG v. American Esoteric Labs, et al.*, C.A. No. 1:11cv57 (W.D. Tex.); *GTG v. Beckman Coulter, et al.*, C.A. No. 3:10cv69 (W.D. Wis.); *GTG v. Covance, Inc. and Variagenics*, C.A. No. 3:03cv1315 (N.D. Cal.); *GTG v. Applera Corp.*, C.A. No. 3:03cv1316 (N.D. Cal.).

[7] Decisions from this District that have denied transfer of patent cases under 28 U.S.C. § 1404(a) also support BMS's request here.  *See, e.g., Competitive Techs., Inc. v. Carolina Liquid Chemistries Corp.*, C.A. No. 05CV01678PSFCBS, 2006 WL 898131, at *6 (D. Colo. Apr. 4, 2006) (transfer denied where patent in issue, which had been litigated in the district previously, was developed at the University of Colorado Health Sciences Center); *Metabolite Labs., Inc. v. AmerisourceBergen Corp.*, C.A. No. 04CV02501WYDCBS, 2005 WL 2105035, at *4 (D. Colo. Aug. 30, 2005) (transfer denied where patent inventors were University of Colorado professors).

- 14 -

**D.      The Public Interest Factors Support Transfer.**

Because patent disputes typically hinge on issues of federal law, the public interest

factors relating to conflict of laws and the forum's familiarity with governing law are usually

irrelevant.  *See TS Tech*, 551 F.3d at 1321.  The public interest factor relating to administrative

difficulties favors transfer because transferring the distinct claims against BMS will streamline

the issues and allow a quicker resolution of those claims.  Likewise, the public interest in

resolving localized controversies at home decidedly favors transfer.  Delaware has a strong

interest in deciding claims against BMS because BMS is incorporated there.  In contrast, because

the patented inventions were not developed in Colorado, no likely witnesses reside here, and

GTG lacks any other meaningful link to this District, Colorado has no interest in this dispute.

*See Nintendo*, 589 F.3d at 1198 (Washington had local interest in deciding case because

Nintendo was incorporated in and had offices there, but transferor court had no interest).  Under

these circumstances, transfer to the District of Delaware is appropriate.[8]

**CONCLUSION**

For the foregoing reasons, BMS respectfully requests that the Court sever the claims with

respect to BMS and transfer them to the United States District Court for the District of Delaware.

A proposed order is attached as Ex. 13.

---

[8] The Court should still transfer the case to Delaware regardless of how the Court resolves the
motion to sever.  BMS and five of the eight other defendants are incorporated there.  Given that
and the near complete lack of any connection to this District, the balance of private and public
convenience factors described above favors transfer of the entire case to the District of Delaware.

Respectfully submitted this 15th day of August 2011.

s/*Tracey C. Allen* _____
Tracey C. Allen
Amy Kreiger Wigmore
WILMER CUTLER PICKERING HALE & DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:  202-663-6856
Fax:  202-663-6363
amy.wigmore@wilmerhale.com
tracey.allen@wilmerhale.com

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6556
FAX: (617) 526-5000
E-mail: William.lee@wilmerhale.com

David B. Wilson
HOLME ROBERTS & OWEN LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203
Telephone:  (303) 861-7000
Facsimile:  (303) 866-0200
Email: david.wilson@hro.com

Attorneys For Defendant
BRISTOL-MYERS SQUIBB COMPANY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Benjamin B. Lieb, Esq.
Hiwot M. Covell, Esq.
Robert R. Brunelli, Esq.
Sheridan Ross, P.C.
1560 Broadway, #1200
Denver, CO 802020-5141
blieb@sheridanross.com
hmolla@sheridanross.com
rbrunelli@sheridanross.com
*Attorneys for Genetic Technologies Limited*

Bruce A. Featherstone, Esq.
Featherstone Petrie DeSisto, LLP
600 17th Street, Suite 2400 South
Denver, CO 80202-5424
bfeatherstone@featherstonelaw.com
*Attorneys for Merial L.L.C.*

George Robert Green, Esq.
Arnold & Porter LLP-Denver
370 Seventeenth Street, Suite 4500
Denver, CO 80202-1370
george.green@aporter.com
*Attorneys for Hologic, Inc.*

John Patrick Elsevier, Esq.
Jones Day-San Diego
12265 El Camino Real, Suite 200
San Diego, CA 92130-4096
jpelsevier@jonesday.com
*Attorneys for Merial L.L.C.*

Hugh Q. Gottschalk, Esq.
Matthew E. Johnson, Esq.
Wheeler Trigg O'Donell LLP
1801 California Street, Suite 3600
Denver, CO 80202
gottschalk@wtotrial.com
johnson@wtotrial.com
*Attorneys for Agilent Technologies, Inc.*

Judy DeLeon Jarecki-Black, Esq.
Merial Ltd.
3239 Satellite Boulevard
Duluth, GA 30096-4640
judy.jarecki@merial.com

S. Jane Mitchell, Esq.
Peter C. Middleton, Esq.
J. Ryan Johnson, Esq.
Hall & Evans, L.L.C.
1125 – 17th Street, Suite 600
Denver, CO 80202
mitchellj@hallevans.com
johnsonr@hallevans.com
middletonp@hallevans.com
*Attorneys for 454 Life Sciences
Corporation*

Terence P.Woodsome, Esq.
Stephen C. Holmes, Esq.
Peter E. Root, Esq.
Michael J. Malecek, Esq.
Kaye Scholer LLP
Two Palo Alto Square, Suite 400
3000 El Camino Real
Palo Alto, CA 94306
terence.woodsome@kayescholer.com
stephen.holmes@kayescholer.com
peter.root@kayescholer.com
michael.malecek@kayescholer.com
*Attorneys for Pfizer, Inc.*

Paula S. Fritsch, Esq.
James V. DeGiulio, Esq.
Dmitriy A. Vinarov, Esq.
McDonnell Boehnen Hulbert & Berghoff
LLP
300 South Wacker Drive
Suite 3100
Chicago, IL 60606
fritsch@mbhb.com
degiulio@mbhb.com
Vinarov@mbhb.com
*Attorneys for 454 Life Sciences Corp.*

Ryan J. Fletcher, Esq.
Kirstin Stoll-DeBell, Esq.
Merchant & Gould P.C.
1050 Seventeenth Street, Suite 1950
Denver, CO 80265
RFletcher@merchantgould.com
KStollDeBell@merchantgould.com
*Attorneys for Eurofins STA Laboratories, Inc.*

Jared C. Walters, Esq.
Timothy J. Lamb, P.C.
1401 – 17th Street, Suite 330
Denver, CO 80202
lambtimothyjpc@qwestoffice.net
*Attorneys for Neogen Corporation*

Mary A. Wells, Esq.
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, CO 80090
mwells@warllc.com
*Attorneys for GlaxoSmithKline plc*

Anita G. Fox, Esq.
Fraser Trebilcock Davis & Dunlap, P.C.
124 West Allegan, Suite 1000
Lansing, MI 48933
*Attorneys for Neogen Corporation*

s/*Tracey C. Allen* _____
Tracey C. Allen

- 3 -