IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01389-WJM-KLM

GENETIC TECHNOLOGIES LIMITED,
an Australian corporation,

      Plaintiff,

      v.

AGILENT TECHNOLOGIES, INC., a Delaware corporation;
BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation;
EUROFINS STA LABORATORIES, INC., a Colorado corporation;
GLAXOSMITHKLINE PLC, a British company;
HOLOGIC, INC., a Delaware corporation;
MERIAL L.L.C., a Delaware limited liability company;
NAVIGENICS, INC., a Delaware corporation;
NEOGEN CORPORATION, a Michigan corporation;
PFIZER INC., a Delaware corporation; and
454 LIFE SCIENCES CORPORATION, a Delaware corporation;

      Defendants.

---

**PLAINTIFF GENETIC TECHNOLOGIES LIMITED'S RESPONSE IN OPPOSITION TO DEFENDANT 454 LIFE SCIENCES CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER [DOC. NO. 101]**

---

Dated:  September 16, 2011

Robert R. Brunelli
    *rbrunelli@sheridanross.com*
Todd P. Blakely
    *tblakely@sheridanross.com*
Benjamin B. Lieb
    *blieb@sheridanross.com*
Hiwot M. Covell
    *hcovell@sheridanross.com*
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
(303) 863-9700
*litigation@sheridanross.com*

ATTORNEYS FOR PLAINTIFF

**TABLE OF CONTENTS**

Page

I.    RELEVANT FACTS ............................................................................ 1

II.   454 IS SUBJECT TO PERSONAL JURISDICTION IN COLORADO .................. 2

      A.    454 Has Continuous And Systematic Contacts With Colorado ...................... 3

            1.    454's Website Shows Purposeful Availment ......................................... 3

            2.    454 is Roche's Alter Ego ........................................................ 4

      B.    454 Is Subject To Specific Jurisdiction In Colorado ....................... 5

      C.    Jurisdictional Discovery May Be Appropriate ................................. 7

III.  GTG HAS PLED A CLAIM FOR INFRINGEMENT ......................................... 8

IV.   THE CLAIMS AGAINST 454 SHOULD NOT BE SEVERED ............................... 8

      A.    454 Is A Proper Party Under Rule 20 ........................................ 9

            1.    GTG's Infringement Claims Create a Common Transaction ................. 9

            2.    There Are Common Questions of Law and Fact ............................ 11

      B.    The Court Should Not Voluntarily Sever 454 From This Action ................. 11

      C.    Consolidation Is Needed If Severance Is Granted ........................... 12

V.    THE COURT SHOULD NOT TRANSFER THIS CASE ................................... 12

      A.    Plaintiff's Choice Of Forum ............................................... 12

      B.    The Accessibility Of Witnesses And Other Sources Of Proof ................. 13

      C.    The Cost Of Making The Necessary Proof ................................... 13

      D.    Difficulties That May Arise From Congested Dockets ........................ 14

      E.    All Other Considerations Of A Practical Nature That Make
            A Trial Easy, Expeditious And Economical And Other Factors ................ 14

VI.   CONCLUSION ............................................................................ 15

i

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                          <u>Page</u>

*AB Invs., LLC v. Gelbard*, ...................................................................................13
    No. 10-cv-00046, 2010 U.S. Dist. LEXIS 113715, at *13-14
    (D. Colo. Oct. 14, 2010)

*B&R Plastics, Inc. v. Kikkerland Design, Inc.*, ....................................................9, 11
    No. 08-cv-02646, 2009 U.S. Dist. LEXIS 107310, at *7-8
    (D. Colo. Nov. 2, 2009)

*Bains Ultra Inc. v. 7677 East Berry Ave. Assocs., LP*, ..............................................8
    No. 08-cv-02021, 2009 U.S. Dist. LEXIS 14633, at *5
    (D. Colo. Feb. 10, 2009)

*Basile v. Missionary Sisters of the Sacred Heart of Jesus*, ..........................................8
    No. 11-cv-01827, 2011 U.S. Dist. LEXIS 93934, at *2
    (D. Colo. Aug. 23, 2011)

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, ......................................................7
    21 F.3d 1558 (Fed. Cir. 1994)

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, ........................................... 5-6
    444 F.3d 1356 (Fed. Cir. 2006)

*Campbell Pet Co. v. Miale*, ...............................................................................3, 6
    542 *F.3d 879 (Fed. Cir. 2008)*

*DIRECTV, Inc. v. Barrett*, ................................................................................10
    220 *F.R.D. 630 (D. Kan. 2004)*

*Dunhall Pharms., Inc. v. Discus Dental, Inc.*, ......................................................13
    No. 97-B-935 (consolidated with No. 97-B-1078),
    1997 U.S. Dist. LEXIS 21182, at *6-7 (D. Colo. Sept. 25, 1997)

*Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, .......................................................14
    618 *F.3d 1153 (10th Cir. 2010)*

*Fish v. East*, ....................................................................................................4
    114 F.2d 177 (10th Cir. 1940)

*GTE New Media Servs. Inc. v. BellSouth Corp.*, ....................................................7
    199 *F.3d 1343 (D.C. Cir. 2000)*

ii

*Hansen v. Denckla,* ..................................................................................................7
    357 U.S. 235 (1958)

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* ..................................................2
    466 U.S. 408 (1984)

*In re Tech USA Corp.,* ..............................................................................................9
    551 F.3d 1315 (Fed. Cir. 2008)

*In re Volkswagen of Am., Inc.,* ................................................................................10
    566 F.3d 1349 (Fed. Cir. 2009)

*Innovative Global Sys. LLC v. Tpk. Global Techs., L.L.C.,* .......................................10
    No. 6:09-cv-157, 2009 U.S. Dist. LEXIS 105929, at *6-7
    (E.D. Tex. Oct. 20, 2009)

*Interval Licensing LLC v. AOL, Inc.,* ........................................................................12
    No. C10-1385, 2011 U.S. Dist. LEXIS 51195, at *10-11
    (W.D. Wash. April 29, 2011)

*Int'l Shoe Co. v. Washington,* ....................................................................................2
    326 U.S. 310 (1945)

*Kohn v. American Hous. Found. I, Inc.,* ......................................................................9
    No. 96-WM-1903, 170 F.R.D. 474, 1996 U.S. Dist. LEXIS 21246, at *3-4
    (D. Colo. Dec. 19, 1996)

*Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.,* .............................................4
    878 F.2d 1259 (10th Cir. 1989)

*McZeal v. Sprint Nextel Corp.,* ...................................................................................8
    501 F.3d 1354 (Fed. Cir. 2007)

*Metabolite Labs., Inc. v. Amerisourcebergen Corp.,* ................................................12
    No. 04-cv-02501, 2005 U.S. Dist. LEXIS 37327, at *11
    (D. Colo. Aug. 30, 2005)

*Mosley v. General Motors Corp.,* ................................................................................9
    497 F.2d 1330 (8th Cir. 1974)

*Nat'l Ass'n of Investors Corp. v. Bivio, Inc.,* ...............................................................9
    No. 10-cv-00567, 2011 U.S. Dist. LEXIS 35354, at *4-5
    (D. Colo. Mar. 21, 2011)

*North Am. Phillips Corp. v. Am. Vending Sales,* ........................................................7
    35 F.3d 1576 (Fed. Cir. 1994)

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* ...........................................8
    203 F.3d 790 (Fed. Cir. 2000)

*Qualmark Corp. v. Data Physics Corp.,* ................................................................13
    No. 07-cv-02665, 2008 U.S. Dist. LEXIS 82937, at *6
    (D. Colo. Sept. 26, 2008)

*SEC v. Woodruff,* ....................................................................................................8
    No. 05-cv-00480, 2011 U.S. Dist. LEXIS 34569, at *71
    (D. Colo. Mar. 31, 2011)

*Shesol v. I.V. House, Inc.,* ......................................................................................12
    No. 06-cv-02551, 2008 U.S. Dist. LEXIS 13513, at *2
    (D. Colo. Feb. 13, 2008)

*Silent Drive, Inc. v. Strong Indus., Inc.,* ................................................................2
    326 F.3d 1194 (Fed. Cir. 2003)

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.,* ................................................10
    233 F.R.D. 615 (D. Kan. 2006)

*Sys. Div., Inc. v. Teknek Elecs., Ltd.,* .....................................................................4
    *No. 2007-1162, 253 Fed. Appx. 31, 2007 U.S. App. LEXIS 25908, at *7*
    (Fed. Cir. Oct. 26, 2007)

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.,* .....................................2, 3, 7
    395 F.3d 1275 (Fed. Cir. 2005)

*United Mine Workers v. Gibbs,* ...............................................................................9
    383 U.S. 715 (1966)

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* .................................................................3
    952 F. Supp. 1119 (W.D. Pa. 1997)

Statutes, Rules and Other Authorities

28 U.S.C.A. § 1404(a) (2010)...................................................................................12

Fed. R. Civ. P. 20....................................................................................................9

Fed. R. Civ. P. 21....................................................................................................8

Plaintiff Genetic Technologies Limited ("GTG") sued Defendant 454 Life Sciences Corporation ("454") and others for infringement of U.S. Patent No. 5,621,179 ("the '179 Patent"). [Doc. No. 1.] 454 moved to dismiss for lack of personal jurisdiction and insufficient pleading of induced infringement. [Doc. No. 101.] 454 also moved to sever all claims against it and to transfer severed claims to Connecticut. [*Id.*] As outlined below, 454 is subject to jurisdiction in Colorado, GTG has pled a proper claim of induced infringement, 454 is a proper party to this action, and 454 should not be severed from or transferred out of the case.

## I.    RELEVANT FACTS

The '179 Patent claims methods for analyzing genetic variations in a non-coding region of deoxyribonucleic acid ("DNA") sequences to detect linked coding region alleles. (Declaration of Dr. Mervyn Jacobson ("Jacobson Dec."), ¶ 5 (filed separately).[1]) GTG alleges that 454 has infringed the '179 Patent by selling the Genomic Sequencer FLX ("GS FLX") and Genomic Sequence Junior ("GS Junior") to customers whom it knew would use the systems to infringe upon the '179 Patent. The other eight Defendants in the case infringe the '179 Patent either through their or their customers' performance of methods claimed in the '179 Patent. To prove these claims, GTG must generally educate the Court on at least:

- Basic structure and operation of DNA;
- Scientific prejudice against non-coding DNA and its characterization as "junk DNA";
- Conception of inventions claimed in the '179 Patent by Dr. Simons;
- Formation of GeneType, its merger with GTG and their business;
- Reduction to practice of the technology embodied in the '179 Patent;
- Prosecution of the applications which matured into the '179 Patent;
- Ownership of the '179 Patent;
- Prior litigations which concerned the '179 Patent and the results thereof;
- Reexamination of the '179 Patent and the results of that proceeding;
- Claims of the '179 Patent, what they cover, and how they are generally infringed; and

---

[1] A general background and history of the '179 Patent is set forth in Dr. Jacobson's Declaration.

- The nature and extent of past licensing of the '179 Patent.  (*Id.*, ¶¶ 5-14.)

Similarly, all Defendants will likely assert that claims of the '179 Patent are invalid, and there will be significant overlap in the evidence and arguments GTG will present in contesting these allegations.  (*Id.*, ¶ 17.)  Finally, GTG seeks a reasonable royalty from each Defendant, and the basic evidence and arguments GTG will present on this point will be identical, regardless of the Defendant involved.  (*Id.*, ¶ 18.)

## II.     454 IS SUBJECT TO PERSONAL JURISDICTION IN COLORADO

Federal Circuit law governs the personal jurisdiction inquiry.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).   If the parties have not conducted jurisdictional discovery (which is the case here), the pleadings and affidavits are to be construed in GTG's favor and 454's Motion should be denied if GTG makes a *prima facie* showing that 454 is subject to personal jurisdiction in Colorado.  *Id.*

The Court can exercise personal jurisdiction over 454 if Colorado's long-arm statute and the U.S. Constitution have been satisfied.  *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279-80 (Fed. Cir. 2005).  Colorado's long-arm statute is coextensive with due process [Doc. No. 101, p. 3], which requires that 454 have minimum contacts, either "general" or "specific," with Colorado such that maintaining the suit against it does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  Under relevant facts of this case, it is fair to subject 454 to jurisdiction in Colorado.

### A.   454 Has Continuous And Systematic Contacts With Colorado

A court may exercise general jurisdiction when a defendant has "continuous and systematic" contacts showing the defendant purposefully availed themselves of privileges of the forum state.  *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008).

### 1.   454's Website Shows Purposeful Availment

Websites which are completely interactive, allowing users to enter contracts and to send and receive computer files, generally show an out-of-state defendant purposefully availed themselves of the forum state's privileges and laws.  *See Trintec Indus.*, 395 F.3d at 1281-82; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997).  454 maintains a highly interactive website at www.my454.com which, in and of itself, should confer upon this Court general jurisdiction over 454.

The www.my454.com website describes the GS Junior and GS FLX and related reagents and how those products and reagents may be used.  (Declaration of Maria Luisa Ashdown ("Ashdown Dec."), ¶ 4, filed separately herewith.)  The site also includes many publications and videos which show how the devices have been used, including several describing how to use the devices to infringe upon the '179 Patent.  (*Id.*)

The website is fully interactive, allowing actual or potential 454 customers to make inquiries of 454 and to seek specific technical support from 454.  (*Id.*, ¶ 5.)  Importantly, 454 allows a customer to execute a specific software license directly through the website, which once executed, allows the customer to then directly acquire software updates for the accused equipment over the site.  (*Id.*)  Customers are also able to specifically order DNA sequencing and a host of other services offered by 454 directly over its website.  (*Id.*)  The www.my454.com

website also includes a full media library and offers users the ability to sign up to view offered webinars put on by 454.  (*Id.*)

The www.my454.com website also allows 454 customers to create an account through which they can gain access to the most up-to-date 454 sequencing product manuals, training information and videos and technical bulletins.  (*Id.*, ¶ 6.)  The site also solicits for employees.  (*Id.*)  However, when a prospective employee clicks the button, he/she is redirected to the www.roche.com website and asked to fill out a company-wide application.  The www.my454.com site also has a hyperlink to the www.roche.com website which, when activated by a user, sends the user to a webpage for Roche Applied Sciences.  On that page, a customer may directly buy products from Roche.  (*Id.*)  There should be no question that 454's www.my454.com website is highly interactive and confers general personal jurisdiction upon this Court.

### 2.       454 is Roche's Alter Ego

Even if a party would not normally be subject to personal jurisdiction in a forum, courts may exercise jurisdiction over the party if its alter ego would be subject to jurisdiction in the forum.  *See, e.g., Sys. Div., Inc. v. Teknek Elecs., Ltd.,* No. 2007-1162, 253 Fed. Appx. 31, 2007 U.S. App. LEXIS 25908, at *7 (Fed. Cir. Oct. 26, 2007).  The determination of whether one company is an alter ego of another is informed by review of ten factors, not all of which need be present for a court to find an alter ego relationship.  *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262-63 (10th Cir. 1989) (citing *Fish v. East*, 114 F.2d 177, 191 (10th Cir. 1940) (referring to factor analysis and applying Colorado law)).  These relevant factors show that:

- Roche owns all capital stock of 454 (Declaration of Hiwot M. Covell ("Covell Dec."), ¶ 4, filed separately).

- GTG is unable to determine from public records if Roche and 454 have common directors or officers.  However, it is likely they have had or currently do have common officers or directors.  Jurisdictional discovery could easily establish the fact, one way or another.

- It appears Roche is financing 454's business activities.  (*Id.*, ¶¶ 3-7.)

- Roche subscribes to all of 454's capital stock.  (*Id.,* ¶ 4.)

- It does not appear that 454 has significant capital, but instead apparently sends all generated revenues to Roche.  (*Id.*)  Jurisdictional discovery could easily confirm this point.

- Media reports indicate Roche pays 454's 167 employees.  (*Id.*, ¶ 8.)

- Roche owns relevant business assets of 454.  (*Id.*, ¶ 9.)

- Roche indicates in its annual reports that 454 is nothing more than a department/division of its diagnostic organization.  (*Id.*, ¶¶ 3-7.)

- Jurisdictional discovery is needed to confirm that directors or executives of 454 take direction from Roche.

- GTG has no way of knowing (without jurisdictional discovery) whether formal legal requirements to maintain 454 as a separate legal entity have been maintained.  However, GTG notes that 454 does not outwardly act as an independent corporation and operating assets and revenues of 454 are held by Roche.

The evidence establishes that 454 should be considered an alter ego of Roche.  Thus, Roche's general Colorado contacts (which include the www.roche.com website and a physical presence in Colorado) (Covell Dec., ¶¶ 11-13)) should be considered the contacts of 454.  If they are, 454 is easily subject to general jurisdiction in Colorado.

### B.     454 Is Subject To Specific Jurisdiction In Colorado

A court may exercise specific jurisdiction over a defendant where the cause of action "arises out of" or "relates to" the defendant's in-state activities.  *Breckenridge Pharm., Inc. v.*

*Metabolite Labs., Inc.,* 444 F.3d 1356, 1360-61 (Fed. Cir. 2006).  The analysis requires courts to inquire: "(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities."  *Campbell*, 542 F.3d at 884 (internal citations and quotation marks omitted).  Further, if the defendant presents a compelling case that exercise of jurisdiction is unreasonable, the court must determine whether its assertion of jurisdiction would "comport with fair play and substantial justice."  *Id.*

454 claims not to have "directly" sold a GS FLX or GS Junior to anyone in Colorado between May 2005 and March 2010, or to have trained anyone in Colorado on any "specific" application of the devices.  [Doc. No. 101-1, p. 2.]  These statements are highly nuanced and misleading.  454 has itself advertised the existence of a GS Junior in Denver.  (Ashdown Dec., ¶ 7.)  Similarly, GTG finds it hard to believe 454 did not know that the University of Colorado ("CU") has been operating a GS FLX since at least 2009, using that device to perform DNA analysis for others and perhaps itself.  (*Id.*, ¶ 8.)  Indeed, CU specifically used its GS FLX to perform genetic analysis of non-coding polymorphisms associated with 16 genes relevant to hypertrophic cardiomyopathy.  (*Id.*)  That work, generally known as "resequencing," is reported in a recently published review article and shows the GS FLX was specifically used in connection with performing methods which infringe claims of the '179 Patent.  (*Id.*)

The evidence of record now establishes that 454 has:  (1) advertised at least through its website the accused products and reagents used therewith in Colorado and encouraged others to use those products in a manner which infringes upon the '179 Patent; (2) sold an accused GS Junior into Colorado; and (3) sold a GS FLX which has been used by CU in connection with the practiced inventions claimed in the '179 Patent.  (*Id.*, ¶¶ 4, 7-8.)  GTG's claims thus "relate" to

454's actions which have been directed at Colorado.  *See, e.g., North Am. Phillips Corp. v. Am. Vending Sales,* 35 F.3d 1576, 1580-81 (Fed. Cir. 1994)[2] (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994)).  Further, 454 "purposely availed" itself of the protections and privileges of Colorado insofar as the demand that gave rise to sale of its accused products in Colorado "existed in part thanks to the legal and economic infrastructure supporting and protecting" the Colorado buyers of its equipment.  *North Am. Phillips*, 35 F.3d at 1580-81 (citing *Hansen v. Denckla*, 357 U.S. 235, 253 (1958)).  Traditional notions of fair play and substantial justice thus can only be fostered by exercising specific personal jurisdiction over 454.

### C.   Jurisdictional Discovery May Be Appropriate

GTG has shown that 454 directly, and/or through Roche, has substantial general and specific contacts with Colorado and is subject to personal jurisdiction in this forum.  If the Court does not yet agree, however, GTG should be granted leave to discover additional evidence concerning: (1) how the above-referenced websites actually function and have been utilized in Colorado; (2) the true and complete relationship between Roche and 454; (3) how the 454 equipment owned by CU and the other Colorado entity has been used since acquisition; and (4) other contacts 454/Roche may have with Colorado.  *Trintec Indus.*, 395 F.3d at 1283 (citing *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) (jurisdictional discovery is appropriate where "a party demonstrates that it can supplement its jurisdictional allegations through discovery.")).

---

[2] Contrary to 454's position [Doc. No. 101, p. 5], the *North Am. Phillips* case does not require that a defendant know direct infringement occurred in the forum state before jurisdiction over that defendant may be found.

## III.   GTG HAS PLED A CLAIM FOR INFRINGEMENT

Background facts and legal standards for review relevant to analysis of 454's Rule 12(b)(6) Motion are set forth in GTG's Motion seeking leave to file an Amended Complaint [*see* Doc. No. 132, pp. 2-9.]  In summary, GTG is entitled under Rule 15(a)(1)(B) to file its Amended Complaint and there is no valid basis for denying GTG's request for leave to file its Amended Complaint.  GTG alleges therein:

- GTG's ownership of the '179 Patent.  [Doc. No. 132-1, ¶ 16.]

- Facts showing 454 has directly infringed and induced third-party infringement of the '179 Patent in the United States in violation of 35 U.S.C. § 271(a) and (b). [Id., ¶¶ 117-120.]

- 454's knowledge of and intent to cause infringement of the '179 Patent.  [Id., ¶ 120.]

Taken as true, the allegations of GTG's Amended Complaint provides more than plausible grounds for GTG's patent infringement claim against 454 and show that 454 has, in fact, infringed upon the '179 Patent.[3]  454's Rule 12(b)(6) Motion should be denied as moot once the Amended Complaint is accepted as filed.  *Basile v. Missionary Sisters of the Sacred Heart of Jesus*, No. 11-cv-01827, 2011 U.S. Dist. LEXIS 93934, at *2 (D. Colo. Aug. 23, 2011).

## IV.   THE CLAIMS AGAINST 454 SHOULD NOT BE SEVERED

District courts have discretion to sever any claims asserted against one party from claims asserted against any other party.  Fed. R. Civ. P. 21.  One justification for severance is misjoinder of a party, others are the promotion of judicial economy and the avoidance of prejudice.  *SEC v. Woodruff*, No. 05-cv-00480, 2011 U.S. Dist. LEXIS 34569, at *71 (D. Colo.

---

[3] GTG's Amended Complaint includes all elements that must be pled under the standards set forth by this Court in *Bains Ultra Inc. v. 7677 East Berry Ave. Assocs., LP.*, No. 08-cv-02021, 2009 U.S. Dist. LEXIS 14633, at *5 (D. Colo. Feb. 10, 2009), and consistent with Federal Circuit precedent in *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007) and *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000).

Mar. 31, 2011).  Joinder and severance are to be resolved upon application of the Federal Rules of Civil Procedure, as interpreted by courts of the forum.  *In re Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

**A.      454 Is A Proper Party Under Rule 20**

Fed. R. Civ. P. 20(a)(2) allows joinder where claims against a defendant arise out of the same transactions or occurrences as claims asserted against other defendants and there is at least one common question of law or fact linking all of the claims.  The Rule should be construed to encourage joinder of claims, parties and remedies, thereby preventing the needless expenditure of scarce judicial resources on multiple similar lawsuits.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *Nat'l Ass'n of Investors Corp. v. Bivio, Inc.*, No. 10-cv-00567, 2011 U.S. Dist. LEXIS 35354, at *4-5 (D. Colo. Mar. 21, 2011).  454 is a proper party to this action.

**1.   GTG's Infringement Claims Create a Common Transaction**

Courts have generally adopted one of two tests in determining whether a "common transaction or occurrence" has been met for purposes of joinder.  Courts in this forum apply the Eighth Circuit's "logical relationship" test.  *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); *see also Kohn v. American Hous. Found. I, Inc.*, No. 96-WM-1903, 170 F.R.D. 474, 1996 U.S. Dist. LEXIS 21246, at *3-4 (D. Colo. Dec. 19, 1996); *B&R Plastics, Inc. v. Kikkerland Design, Inc.*, No. 08-cv-02646, 2009 U.S. Dist. LEXIS 107310, at *7-8 (D. Colo. Nov. 2, 2009).[4]  The test is "flexible," contemplating that a series of seemingly unrelated events can be a common transaction if there is a "logical relationship" between them.  Whether that logical relationship exists is determined by assessing "the likelihood of overlapping proof and

_____

[4] 454 generally points to courts which focus on the inapplicable "factual commonality" test in suggesting it has been misjoined into this action.  [Doc. No. 101, p. 8.]

9

duplication in testimony."  *Woodruff*, 2011 U.S. Dist. LEXIS 34569, at *69 (internal quotation marks omitted) (citing *DIRECTV, Inc. v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004)); *see also B&R Plastics,* 2009 U.S. Dist. LEXIS 107310, at *7.

Neither the Tenth Circuit nor this Court have addressed what constitutes a "logical relationship" between unconnected defendants in a patent case.  However, other courts which have adopted the logical relationship test provide clear guidance on the issue.  Specifically, in *Innovative Global Sys. LLC v. Tpk. Global Techs., L.L.C.*, a Texas court declined to sever a defendant, determining there would be significant overlap between issues of claim construction, claim scope and validity in the case and that a "familiarity with the patents could preserve [judicial] time and resources."  No. 6:09-cv-157, 2009 U.S. Dist. LEXIS 105929, at *6-7 (E.D. Tex. Oct. 20, 2009) (internal quotation marks omitted) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)).  In *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, a Kansas court similarly denied a motion to sever, determining that since Sprint asserted the same seven patents against all defendants, it was "undeniable that the court will inevitably be faced with duplicative arguments and overlapping evidence."  233 F.R.D. 615, 617 (D. Kan. 2006). The court's holding was supported by the realization that "severing the claims before trial would produce inconsistent pretrial rulings, particularly in construing the patents pursuant to *Markman.* . . ." *Id.* at 618.

GTG properly joined 454 and the other Defendants in this case because the claims asserted against each is for: (1) infringement of the '179 Patent; and (2) award of a reasonable royalty.  Though each Defendant is alleged to have infringed using different equipment and by analyzing different genes, much of the proof needed to establish these claims will be common to each Defendant. (Jacobson Dec., ¶¶ 15-16.)  Also, the basic affirmative defense of patent

invalidity and royalty issues to be addressed in the action will be common to all Defendants. (*Id.*, ¶ 17.)  Accordingly, there would be significant overlap of evidence and arguments if GTG were required to proceed in separate actions against each Defendant.   That overlap and duplication in proof establishes a logical relationship between claims asserted against the various Defendants, and thus all of those claims arise out of the same "transaction or occurrence" pursuant to Fed. R. Civ. P. 20(a)(2).

### 2.   There Are Common Questions of Law and Fact

GTG has alleged infringement of the '179 Patent against each Defendant, meaning there is at least one common question of law and fact in each claim.  *B&R Plastics,* 2009 U.S. Dist. LEXIS 107310, at *9.  The second prong of Fed. R. Civ. P. 20's test is thus also met.

### B.   The Court Should Not Voluntarily Sever 454 From This Action

454 suggests that judicial economy will be fostered and prejudice would be avoided by severance.  [Doc. No. 101, pp. 9-10.]  However, 454 has not identified even a single specific issue which would somehow negatively impact judicial economy if addressed in combination with claims asserted against other Defendants.  [*Id.*]  This is perhaps not surprising since judicial economy can only be fostered by having all similar claims ruled upon in a single case.  *See, e.g., B&R Plastics*, 2009 U.S. Dist. LEXIS 107310, at *8 (court holding that "separate trials would result in delay, inconvenience, and added expense to the parties and to the court.").   The prejudice arguments advanced by 454 are similarly meritless.  The first relates to the possible forced disclosure of confidential information to its competition [Doc. No. 101, pp. 9-10], an issue which can easily be addressed with an umbrella protective order or on an *ad hoc* basis.  The second concerns coherent presentation of testimony to a jury at trial.  [*Id.*, p. 10.]  Statistically, it is unlikely 454 will see a trial in this case, but if it does, the Court may implement procedures

which will eliminate potential jury confusion.  The Court should exercise its discretion to ***not*** sever 454 from this case.

> **C.**     **<u>Consolidation Is Needed If Severance Is Granted</u>**

Should the Court decide to sever 454 from this case, GTG requests that the 454 action be consolidated through pretrial motions with the present action to preserve judicial and party resources.  *See, e.g., Interval Licensing LLC v. AOL, Inc.*, No. C10-1385, 2011 U.S. Dist. LEXIS 51195, at *10-11 (W.D. Wash. April 29, 2011).

## V.     <u>THE COURT SHOULD NOT TRANSFER THIS CASE</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C.A. § 1404(a) (2010); *see also Shesol v. I.V. House, Inc.*, No. 06-cv-02551, 2008 U.S. Dist. LEXIS 13513, at *2 (D. Colo. Feb. 13, 2008).  Several factors should be considered in analyzing a transfer request, and transfer is improper where it only serves to shift the inconvenience from one party to another.  *Shesol,* 2008 U.S. Dist. LEXIS 13513, at *3.  Further, the "moving party bears the burden of demonstrating that the existing forum is inconvenient." *Metabolite Labs., Inc. v. Amerisourcebergen Corp.*, No. 04-cv-02501, 2005 U.S. Dist. LEXIS 37327, at *11 (D. Colo. Aug. 30, 2005).  454 has not met that burden.

> **A.  <u>Plaintiff's Choice Of Forum</u>**

GTG's Vice President of Global Licensing and Intellectual Property, Dr. Jacobson, will be a key witness for GTG at trial.  (Jacobson Dec., ¶ 16.)  He currently and for more than 20 years has had his North American offices located in Larimer County, Colorado.  (*Id.*, ¶ 19.) Also, GTG's litigation counsel has, in connection with earlier actions, collected documents that may be relevant to this dispute from GTG's worldwide offices.  (*Id.*)  GTG now maintains those

documents at counsel's Denver offices.  (*Id.*)  Also, Defendant Eurofins STA Laboratories, Inc. is located in Colorado.  In short, this action has strong connections to Colorado and GTG chosen venue should be given deference.  *See Dunhall Pharms., Inc. v. Discus Dental, Inc.*, No. 97-B-935 (consolidated with No. 97-B-1078), 1997 U.S. Dist. LEXIS 21182, at *6-7 (D. Colo. Sept. 25, 1997) (even if a plaintiff chooses to litigate away from its principal place of business, its choice of forum still deserves some deference).

### B.  <u>The Accessibility Of Witnesses And Other Sources Of Proof</u>

454's conclusory statement that Connecticut would be a more convenient forum for unidentified witnesses does not satisfy its burden of demonstrating that the existing forum is inconvenient.  *See* Doc. No. 101, pp. 12-13; *Qualmark Corp. v. Data Physics Corp.*, No. 07-cv-02665, 2008 U.S. Dist. LEXIS 82937, at *6 (D. Colo. Sept. 26, 2008) (movant must set forth identity and material testimony of witnesses to meet burden).  This factor also tips heavily in favor of litigating in Colorado.

### C.  <u>The Cost Of Making The Necessary Proof</u>

Advancements in discovery technology have greatly reduced the cost for producing documentary evidence in remote locations and should be a non-factor on determining a transfer motion.  *AB Invs., LLC v. Gelbard*, No. 10-cv-00046, 2010 U.S. Dist. LEXIS 113715, at *13-14 (D. Colo. Oct. 14, 2010).  Further, 454's unidentified witnesses need not travel to Colorado to give testimony -- they can testify by deposition and never leave their state of residence.  [Doc. No. 101, pp. 13-14.]  This factor is thus neutral, at best, for 454.

### D.  Difficulties That May Arise From Congested Dockets

The 2010 Judicial Business statistics states that in the District of Colorado[5] for civil cases, the median time from filing to disposition was 5.8 months.  (Covell Dec., ¶ 14.) The median time from filing to a jury trial was 29.1 months.  (*Id.*)  The statistics on pending cases per judge in civil cases was 441 unweighted and 515 weighted.  (*Id.*)  In Connecticut, the median time from filing to disposition was 7.1 months, the median time from filing to a jury trial was 29.2 months.  (*Id.*)  The statistics on pending cases per judge in civil cases was 268 unweighted and 320 weighted.  (*Id.*)  When viewed in their totality, the statistics are either neutral or weigh in favor of not transferring claims against 454 to Connecticut.  *See Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).

### E.  All Other Considerations Of A Practical Nature That Make A Trial Easy, Expeditious And Economical And Other Factors

The heart of this case, as in most all patent cases, will likely be a *Markman* hearing.  It would be economical and expeditious for a single Court to hold a single *Markman* hearing, rather than have several courts hear argument and issue possibly inconsistent claim constructions.  Further, substantive questions presented in this case will be based on federal law and there should be no issue regarding the enforceability of a judgment if one is obtained.  In short, all relevant remaining factors in a 28 U.S.C. § 1404(a) analysis are either neutral or favor denying 454's request for a transfer.

---

[5] Since these statistics were compiled, additional judges have been appointed to the Colorado Bench, which further enhances Colorado's statistics.

**VI.**    <u>**CONCLUSION**</u>

Claims against 454 should not be dismissed, severed or transferred.

Respectfully submitted,

Dated: September 16, 2011          By:   s/Robert R. Brunelli

Robert R. Brunelli
*rbrunelli@sheridanross.com*
Todd P. Blakely
*tblakely@sheridanross.com*
Benjamin B. Lieb
*blieb@sheridanross.com*
Hiwot M. Covell
*hcovell@sheridanross.com*
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202-5141
(303) 863-9700
(303) 863-0223 (facsimile)
*litigation@sheridanross.com*

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Lori R. Brown
Lori R. Brown
Assistant to Robert R. Brunelli/Benjamin B. Lieb
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO  80202-5141
Telephone:  303-863-9700
Facsimile:  303-863-0223
Email:  lbrown@sheridanross.com
litigation@sheridanross.com