IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-01389-WJM-KLM

GENETIC TECHNOLOGIES LIMITED, an Australian corporation,

      Plaintiff and Counter Defendant,

v.

AGILENT TECHNOLOGIES, INC., a Delaware corporation,
BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation,
EUROFINS STA LABORATORIES, INC., a Colorado corporation,
MERIAL L.L.C., a Delaware limited liability company,
PFIZER INC., a Delaware corporation,
454 LIFE SCIENCES CORPORATION, a Delaware corporation,
GENESEEK, INC., a Nebraska corporation, and
GLAXOSMITHKLINE LLC, a Delaware corporation,

      Defendants;

BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation, and
EUROFINS STA LABORATORIES, INC., a Colorado corporation,

      Counter Claimants.

_____

## ORDER DENYING MOTION FOR STAY
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendants' Motion for a Stay and to Vacate Scheduling Conference and Related Pre-Conference Deadline** [Docket No. 183; Filed October 5, 2011] (the "Motion").  The Motion is referred to this Court for disposition.  Docket No. 184.  The Court heard oral argument regarding the Motion on October 12, 2011. Docket No. 191.  Plaintiff filed a Response in opposition to the Motion on October 12, 2011 (the "Response").  Docket No. 192.  Having reviewed the Motion, the Response, the

applicable case law, and having heard the parties' oral arguments, the Court is fully advised

in the premises.   For the reasons stated below, the Court **DENIES** the Motion.

## I.  Factual Background

Plaintiff Genetic Technologies Limited ("Plaintiff") filed this lawsuit against

Defendants in May of 2011 for infringement of U.S. Patent No. 5,621,179 entitled "Intron

Sequence Analysis Method for Detection of Adjacent and Remote Locus Alleles as

Haplotypes" ("the '179 Patent").   *First Am. Compl.*, Docket No. 150 at 4-5.   As described

by Plaintiff, "the '179 Patent generally claims methods for analyzing genetic variations in

a non-coding region of DNA sequences to detect linked coding alleles." *Response*, Docket

No. 192 at 7.   Alleles are specific sequences of bases located within a gene.   *Id.* at 8.

Genes have both coding and non-coding regions of DNA.   *Id.*  According to Plaintiff, the

'179 Patent is one of forty-nine patents it owns which provide a method by which the

genetic bases found in the non-coding DNA of animals, humans and plants can be utilized

to analyze coding region alleles of associated genes and to map gene traits.   *Id.* at 9.

Plaintiff "alleges that Defendants infringe the '179 Patent through either their or their

customers'/vendors' analysis of non-coding [genetic bases] which are characteristic of

coding region alleles."  *Id.* at 10.

The '179 Patent expired on March 9, 2010.   *Id.* at 14 n.2.   Plaintiff seeks "a

reasonable royalty for each Defendant's infringement of the '179 Patent,"  and asserts that

its "damages window is defined by a date six years prior to the filing of the action [as the

beginning date] and the . . . expiration date of the '179 Patent [as the ending date]."  *Id.* at

11, 14 n. 2.

Plaintiff admits that "each Defendant is alleged to have infringed the '179 Patent relating to different genes using different equipment and reagents." *Id.* at 20.  Defendants assert that "the only common thread among [them] is [Plaintiff's] contention that each Defendant infringed the '179 Patent."  *Motion*, Docket No. 183 at 3.

According to the allegations of the First Amended Complaint, Defendant Agilent Technologies, Inc. ("Agilent") manufactured diagnostic instruments and laboratory equipment which were used by its customers "with Agilent's knowledge and encouragement" to infringe the '179 Patent ([#150] at ¶¶ 28-33); Defendant Bristol-Myers Squibb Company ("BMS") engaged in research and pharmaceutical product development which infringed the '179 Patent (*Id.* at ¶¶ 34-51); Defendant Eurofins STA Laboratories, Inc. ("Eurofins") engaged in laboratory work and created databases relating to the genotyping of plants which infringed the '179 Patent (*Id.* at ¶¶ 52-63); Defendant GeneSeek, Inc. ("GeneSeek") provided agricultural testing of animals and plants which infringed the '179 Patent (*Id.* at ¶¶ 64-73); Defendant GlaxoSmithKline LLC ("GSK") engaged in research and pharmaceutical product development which infringed the '179 Patent (*Id.* at ¶¶ 74-87); Defendant Hologic, Inc. ("Hologic") (now dismissed, *see* Docket No. 193) sold diagnostic products which infringed the '179 Patent (*Id.* at ¶¶ 88-93); Defendant Merial L.L.C. ("Merial") researched, developed and sold genetic tests for DNA markers in beef and dairy cattle which infringed the '179 Patent (*Id.* at ¶¶ 94-100); Defendant Pfizer, Inc. ("Pfizer") engaged in research and pharmaceutical product development which infringed the '179 Patent (*Id.* at ¶¶ 101-116); and Defendant 454 Life Sciences Corp. ("454") researched, developed and sold systems to analyze genes which infringed the '179 Patent (*Id.* at ¶¶ 117-120).  The alleged commencement dates of infringement, as reflected in the First

3

Amended Complaint, range from unspecified (as to Defendant GeneSeek) to sometime before August 12, 2009 (Defendant Eurofins).  *Id.* at ¶¶ 61, 64-73).

## II.  Procedural History

Plaintiff filed its original Complaint on May 25, 2011.  Docket No. 1.  A preliminary Rule 16 scheduling conference was held on August 19, 2011.  Docket No. 117.  As a result of several Defendants' requests for extensions of time to respond to the Complaint and Plaintiff's representation that it intended to seek leave to amend the Complaint, the Court suspended all deadlines to respond to the original Complaint and directed Plaintiff to file its motion for leave to amend and proposed amended complaint by September 16, 2011.  Docket No. 126.  Plaintiff filed its proposed First Amended Complaint on that date.  Docket No. 132.  The Court granted Plaintiff leave to amend and accepted the First Amended Complaint for filing on September 19, 2011.  Docket No. 149.  A Rule 26(f) scheduling conference is set for November 1, 2011.  *Id.*

The First Amended Complaint has prompted a variety of responses from Defendants.  Defendant Merial filed a Motion to Dismiss for Improper Venue or Improper Joinder.  Docket No. 166.   Defendant Hologic filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6); Plaintiff subsequently voluntarily dismissed Defendant Hologic from the lawsuit. Docket Nos. 172, 193.  Defendant BMS filed an Answer and Counterclaims, but has also moved to sever for improper joinder and to transfer pursuant to 28 U.S.C. § 1404(a). Docket Nos. 173, 175.  Defendant Agilent filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) and a Motion to Sever for Improper Joinder and to Transfer Under 28 U.S.C. § 1404(a). Docket Nos. 174, 178.  Defendant Eurofins filed an Answer and Counterclaims. Docket No. 176.  Defendant Pfizer filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

and also moved to sever for improper joinder and to transfer pursuant to 28 U.S.C. § 1404(a).  Docket Nos. 179, 180.  Defendant 454 previously filed a Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Sever and to Transfer; this motion was not mooted by the First Amended Complaint and remains pending.  Docket Nos. 101, 157.  Defendant GeneSeek filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a Conditional Motion to Sever and Transfer.  Docket Nos. 194, 195.  These dispositive motions are pending before the District Judge.  Defendant GSK has not yet responded to the First Amended Complaint; its answer (or other response) is due November 21, 2011.  Docket No. 164.  On October 5, 2011, Defendants Agilent, BMS, Eurofins, Hologic, Merial, Pfizer and 454 filed the Motion for Stay and for other relief which is presently before the Court.

## III.  Analysis

### A.  Legal Basis, Burden of Proof and Applicable Factors Regarding Entry of a Stay

This Court has long noted that the Federal Rules of Civil Procedure do not explicitly provide for a stay of *proceedings* in a lawsuit. *String Cheese Incident, LLC v. Stylus Shows, Inc.,* No. 02-cv-01934-LTB-PAC, 2006 WL 894955 (D. Colo. Mar. 30, 2006).  However, the Court has construed Fed. R. Civ. P. 26(c) to permit a stay of *discovery* "for good cause, to protect a party from undue burden or expense," especially when dispositive motions are pending.  *Id.*  The party who seeks a stay of discovery has the burden of demonstrating good cause, and "cannot sustain that burden by offering simply conclusory statements." *Tr. of Springs Transit Co. Emp.'s Ret. and Disability Plan v. City of Colorado Springs,* No. 09-cv-02842-WYD-CBS, 2010 WL 1904509, at *4 (D. Colo. May 11, 2010).  Generally, the Court requires a "particular and specific demonstration of fact" in support of a request for

a stay.  *Id.*; *see also Christou v. Beatport, LLC*, No. 10-cv-02912-CMA-KMT, 2011 WL 650377, at *1 (D. Colo. Feb. 10, 2011).  In the context of ruling on a motion to stay, the Tenth Circuit Court of Appeals stated almost thirty years ago that "the right to proceed in court should not be denied except under the most extreme circumstances."  *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir. 1983).  Hence, it has long been recognized that stays are generally disfavored in this district, although the decision to grant or deny them invokes the discretion of the Court under the circumstances at issue.  *See, e.g., id.*

Precedent amply demonstrates that the Court has broad discretion to stay an action when a dispositive motion is pending.  *String Cheese Incident, LLC,* 2006 WL 894955 at *2 (finding that a thirty-day stay of discovery was appropriate when a motion to dismiss for lack of personal jurisdiction was pending).  Indeed, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved."  8 Charles Allen Wright et al., *Federal Practice and Procedure* § 2040, at 521-22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved."); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,* 201 F.R.D. 1, 2 (D.D.C. 2005) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." (internal quotation omitted)); *Nankivil v. Lockheed Martin Corp.,* 216 F.R.D. 689, 692 (M.D.

Fla. 2003) (holding that a stay is appropriate if "resolution of a preliminary motion may dispose of the entire action").

Finally, the factors to be applied by the Court in determining the propriety of a stay are: (1) Plaintiff's interests in proceeding expeditiously with the action and the potential prejudice to Plaintiff resulting from a delay; (2) the burden on the Defendants; (3) the convenience to the court; (4) the interests of persons not parties to the litigation; and (5) the public interest. *String Cheese Incident, LLC*, 2006 WL 894955 at *2.

## B. Stays of Patent Cases

Despite the well-known adage that patent infringement cases are frequently complex, expensive, and time-consuming, courts in this district have been reluctant to impose stays in such cases. Indeed, one magistrate judge has noted:

> Discovery often involves burden. Environmental cases, patent infringement cases, and collective actions under the Fair Labor Standards Act come immediately to mind as complex cases that may involve substantial discovery but which ordinarily are not stayed pending the determination of preliminary motions.

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2011 WL 4018207 (D. Colo. Sept. 8, 2011). *See also City of Aurora, Colo. v. PS Sys., Inc.,* No. 07-cv-02371-WYD-BNB, 2008 WL 149998 (D. Colo. Jan. 14, 2008) (denying motion to stay pending determination of motion to dismiss based on lack of jurisdiction because motions to dismiss are more often denied than granted and because of delay in adjudication that would result from stay); *Competitive Techs., Inc. v. Carolina Liquid Chemistries Corp.,* No. CIVA05CV01678-PSF-CBS, 2006 WL 13169 (D. Colo. Jan. 3, 2006) (denying without prejudice motion to stay pending Supreme Court review of patent validity, despite pending motion to dismiss for lack of personal jurisdiction or alternatively to transfer venue).

7

However, the opposite result is the norm in cases where a reexamination proceeding is pending in the United States Patent and Trademark Office ("USPTO"). *See, e.g., EdiSync Sys., Inc. v. Centra Software, Inc.,* No. 03-cv-01587-WYD-MEH, 2009 WL 3698520 (D. Colo. Nov. 6, 2009) (applying four-factor test and granting motion to stay pending outcome of patent reexamination proceedings); *eSoft, Inc. v. Blue Coat Sys., Inc.,* 505 F. Supp. 2d 784 (D. Colo. 2007) (same); *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.,* No. 03-cv-2223-ABJ-BNB, 2006 WL 1897165 (D. Colo. July 11, 2006) (same). Plaintiff asserts that the '197 Patent was subjected to an *ex parte* reexamination by the USPTO in 2009, which ultimately "issued a Certificate confirming that involved claims were valid as originally issued." [#192] at 10. No party has suggested that a reexamination proceeding is currently underway regarding the '197 Patent.

## C. The *String Cheese* Factors

### 1. Plaintiff's Interests

In at least one way, this litigation is no different from other civil litigation. Plaintiff's interest in proceeding with the lawsuit is manifest, as is Defendants' interest in delaying it. The parties do have one common interest: to avoid spending money on discovery. To Plaintiff, however, the cost of discovery is a necessary evil, endured because it inches Plaintiff closer to the end goal of settlement or a favorable verdict. To Defendants, the cost of discovery is an *un*necessary evil, to be delayed and ultimately avoided entirely, if at all possible.

Plaintiff has identified its specific interests in proceeding with this case by pointing out three types of prejudice that would result from imposition of a stay. First, Plaintiff explains the "redundancy" that would occur in separate lawsuits regarding infringement of

the '197 Patent.   Second, Plaintiff explains the potential harm to its ability to collect royalties.   Third, Plaintiff explains that a stay will prejudice its efforts to collect evidence.

Regarding the first point, Plaintiff argues that "it is highly likely that all Defendants will assert that claims of the '179 Patent are invalid for one reason or another," and there will be "significant overlap in the evidence and arguments [Plaintiff] will present in contesting the invalidity allegations."  [#192] at 11.  Plaintiff anticipates having to educate judge and jury about extensive background information relating to DNA, corporate formation and merger, and the '179 Patent itself (conception of the inventions, reduction to practice of the technology, prosecution of the application, ownership, prior litigation, reexamination, claims construction and past licensing).  *Id.* at 10-11.  Implicit in this argument is the assertion that Plaintiff will spend a great deal more money conducting discovery in separate lawsuits than in a single lawsuit.  Although this is undoubtedly true, I find that it is not persuasive.

Essentially, Plaintiff's argument is that it will be financially prejudiced if the law requires Plaintiff to file separate suits regarding infringement of the '179 Patent.  Rejection of a stay would reduce some of the expense that would result *if* Defendants' severance and/or transfer motions are granted, because without a stay Plaintiff can conduct discovery against multiple Defendants simultaneously in a single forum.  However, this is not the type of "prejudice" that the Court should consider here.   A party's desire to minimize the expense that would likely result from eventual legal rulings is not equivalent to a desire to avoid "prejudice;" it is simply a desire to get the biggest bang for its buck.   Although Plaintiff's desire to reduce expenses is understandable given the high price of federal court litigation, the fact that Plaintiff may ultimately be required to file separate lawsuits at greater

expense is simply not prejudicial.  A party who chooses to engage in litigation is hard-pressed to persuasively argue that application of the law to litigation maneuvering could create prejudice to that party.

Regarding Plaintiff's ability to collect royalties, Plaintiff asserts that in light of the expiration of the '179 Patent in March of 2010 and the six-year statute of limitations on patent damages contained in 35 U.S.C. § 286, its damages window is fixed at May 25, 2005 to March 9, 2010.  According to Plaintiff, every day of delay in the lawsuit will cost Plaintiff royalties from third-party infringers.  Plaintiff notes that this Court has previously stated that the average time from filing to determination of dispositive motions in this district exceeds six months.  "A stay in this case will by necessity delay [Plaintiff's] ability to pursue those third-party infringers, costing [Plaintiff] at least six months of potential royalties from third party infringers that [Plaintiff] is due."  [#192] at 14-15.  If Plaintiff sued newly-discovered third-party infringers in separate litigation, the damages window would be smaller, because its commencement date would be six years prior to filing of the new lawsuit, but its end date would remain the March 2010 expiration date of the '197 Patent. *See Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, - - F.3d - - , 2011 WL 3672474, at *5 (Fed. Cir. 2011) ("[A]n expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286." (citation omitted)). Plaintiff's interest in  receiving appropriate compensation for use of its intellectual property is strong, and therefore Plaintiff would be prejudiced by loss of the opportunity to receive such compensation.

Finally, Plaintiff asserts that its attempts to collect electronic evidence from third parties will be prejudiced by a stay.  Plaintiff asserts that such non-parties will not be

subject to a litigation hold, and evidence in their possession may be lost or destroyed, or will cost more to obtain due to the need for forensic reconstruction. [#192] at 16. Plaintiff fails to identify these non-parties by name, business, type of potentially-infringing activity, or any other more specific information. Plaintiff also fails to describe the evidence they might possess, or provide any information about the process or cost involved in potential forensic reconstruction. In the absence of further specificity, Plaintiff's allegations are conclusory and do not support a viable finding of prejudice. *See Tr. of Springs Transit Co. Emp.'s Ret. and Disability Plan,* 2010 WL 1904509 at *4.

Due to the potential loss of royalties to Plaintiff which could result from a delay in its ability to prosecute its claims, this factor weighs against imposition of a stay.

### 2. Defendants' Burden

Defendants assert that the Court should impose a stay "to avoid material unnecessary expense." [#183] at 5. Defendants argue that discovery in this case will take longer than in separate cases ("[Plaintiff's] tactical decision to join unrelated claims against unrelated parties in a single suit inevitably would make discovery move more slowly and thus take longer to complete than if [Plaintiff] had chosen to sue each defendant separately"); the cost in this case will be "unusually large" because Plaintiff has indicated that its records regarding the '179 Patent comprise "more than two million pages worth" and the claims between Plaintiff and each Defendant could potentially involve the exchange of millions of pages of documents; and discovery would be multiplied because "each defendant necessarily would need to monitor the depositions and at least some of the documents pertaining to each of the other eight defendants," especially since Plaintiff

"alleges totally separate and unrelated infringing activity by each of the nine defendants." *Id.* at 7-8. Defendants also assert that, due to the fact that some of them are "direct competitors" (*e.g.*, Merial and Pfizer), the burden of protecting "non-public, confidential and commercially sensitive information" will be greater and will cost more money than if they were sued separately. *Id.* at 9. More specifically, Defendants suggest that due to their joinder in this litigation, issues will arise regarding broader production and use of documents originally produced between only two parties, for example. *Id.* at 8-9.

Despite Plaintiff's contention that Defendants' assertions of burdensomeness are "illusory," it is difficult to deny their accuracy as general propositions. [#192] at 17. Plaintiff responds that "the discovery [it] seeks now will not be wasted," because Defendant's dispositive motions will be denied, Plaintiff will further amend its Complaint, or the claims will proceed in another court. *Id.* However, whether discovery will be wasted or not is beside the point; the issue is whether Defendant will be unfairly burdened if discovery proceeds before rulings are issued on the dispositive motions. *See, e.g., String Cheese Incident, LLC*, 2006 WL 894955 at *2 ("defendants, however, also would undoubtedly be prejudiced if they were forced to engage in discovery if the court eventually granted their motion to dismiss"). Moreover, the Court is not inclined to prejudge the merits of the dispositive motions or speculate about future attempts to amend the Complaint. The bottom line is that there is little doubt that discovery in this litigation will take longer and be more expensive than if any Defendant was sued on the same claims individually. The Court will not require a more specific showing of burden here, when an attempt to demonstrate increased costs would necessarily be speculative and when experience and common sense dictate only one conclusion. *See SOLIDFX, LLC*, 2011 WL 4018207 at *3

(recognizing patent infringement cases "as complex cases that may involve substantial discovery"); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citation omitted)).  The burden on Defendants of proceeding jointly is substantial.  This factor weighs in favor of entering a stay.

### 3.  Convenience to the Court

Defendants assert that entry of a stay will avoid needless "grappling" over the substance of the suit while dispositive motions involving jurisdiction are pending.  [#183] at 9.  Plaintiff asserts that entry of a stay will inconvenience the Court by causing delay, which makes the Court's docket less predictable and less manageable, and because discovery would proceed in a piecemeal fashion even if a stay is entered, as some Defendants are not parties to the Motion.[1]  [#192] at 25.

Imposition of a stay as to some, but not all, parties does not convenience the Court. Although Defendant Eurofins has joined the Motion to Stay, it did not file a dispositive motion.  Thus, Eurofins cannot contend that Plaintiff's claims against it may ultimately be dismissed, or that those claims will not proceed in this forum.  Under those circumstances, Eurofins has no meaningful basis on which to request entry of a stay.  Moreover, Defendant GeneSeek has not joined the request for a stay, and nor has Defendant GSK, despite its ability to do so before responding to the Amended Complaint.  At best, any stay would

---

[1]  At the time of filing of the Motion, Defendant GeneSeek had not yet responded to the First Amended Complaint.  On October 19, 2011, GeneSeek filed a Motion to Dismiss for failure to state a claim on which relief may be granted [#194] and a Motion to Sever and Transfer [#195].  GeneSeek has not, however, joined the Motion to Stay.  Defendant GSK's deadline to respond to the First Amended Complaint is November 21, 2011.

therefore exclude these Defendants.

If certain Defendants must be excluded from the stay, the litigation would proceed in its ordinary fashion as to Plaintiff and those Defendants.  The next imminent event involves entry of a Scheduling Order (the Scheduling Conference is set for November 1, 2011).  Entry of the Scheduling Order as to Plaintiff and three Defendants, but not the remainder, essentially ensures that a substantial part of the litigation, and its inherent potential for motions practice, discovery disputes and on-going use of judicial resources, continues.  Moreover, entry of this Court's Patent Scheduling Order requires the establishment of multiple deadlines that will apply to all parties against whom Plaintiff's claims will eventually proceed (*e.g.*, deadline for alleged infringers to disclose their initial claim charts, deadline for alleged infringers to file their prior art statements and invalidity contentions, deadline for filing of a joint claim construction statement, setting of a technology tutorial and claim construction hearing).  Essentially, granting a partial stay creates the possibility that the case will proceed on two separate procedural tracks: one for the unstayed litigants, and a different one for those who are subject to the stay.  Management of the case on separate procedural tracks is inconvenient and burdensome to the Court.  This factor weighs against entry of a stay.

### 4.  Interest of Non-Parties

Defendants assert that the depositions of individuals who are or were employed by parties that may be dismissed can be avoided through entry of a stay.  [#183] at 10.  Further, Defendants contend that a stay may obviate the need for discovery from other unidentified third parties who are "implicated as direct infringers in [Plaintiff's] vague direct infringement allegations."  *Id.*  Plaintiff argues that "third party infringers will be deposed one

14

way or another – a stay only delays the inevitable." [#192] at 25.

The Court finds that this factor does not weigh in favor of or against imposition of a stay, as it is impossible to predict the effect of a stay on any non-parties at this time.

### 5.  The Public Interest

Both parties acknowledge that the public interest favors prompt and efficient handing of all litigation.  Not surprisingly, they disagree as to the effect of a stay in this case on its prompt, efficient and inexpensive resolution.  [#183] at 10; [#192] at 25-26.

The public interest at stake here is the same interest underlying all lawsuits: that they be resolved as fairly, quickly, and inexpensively as possible.  In light of the issues outlined above, the Court finds that considerations of fairness, timeliness and expense will not be advanced by imposition of a stay.  Hence, this factor weighs against entry of a stay.

### IV.  Conclusion

The strong presumption against stays, as well as application of the *String Cheese* factors, results in the conclusion that imposition of a partial stay is not justified in this case. The  burden on Defendants in proceeding is outweighed by the prejudice to Plaintiff from the entry of a partial stay, as well as by the inconvenience that a partial stay would create for the Court.  Accordingly,

IT IS HEREBY **ORDERED** that the Motion is **DENIED**.

IT IS FURTHER **ORDERED** that the Rule 26(f) Scheduling Conference set for November 1, 2011, at 11:00 a.m. is **VACATED** and **RESET** to **November 22, 2011**, at **10:30 a.m.** in Courtroom C-204, Second Floor, Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.  Counsel for the parties must appear in person or by

telephone.  Any attorney who wishes to appear by telephone must file a motion seeking permission to do so no later than five (5) Court business days before the Rule 26(f) conference.  The proposed scheduling order shall be submitted on the patent order form on or before **November 17, 2011**.

Dated: October 20, 2011

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

16